CARL W. MYSLINSKI *v.* STATE OF INDIANA.

[No. 1070S231. Filed December 3, 1971. Rehearing denied
January 19, 1972.]

*Palmer K. Ward,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *William F. Thompson,* Assistant Attorney General, for appellee.

GIVAN, J.—Appellant was originally charged by affidavit with the crime of armed robbery as defined in Burns Ind. Stat., 1970 Supp., §10-4709. Subsequently the State filed a second count charging appellant with the crime of robbery as defined in Burns Ind. Stat., 1956 Repl., § 10-4101. The State then filed a motion to dismiss the charge of armed robbery and elected to go to trial on the charge of robbery.

Trial by jury resulted in a verdict of guilty of the lesser included offense of theft. Appellant was sentenced to the Indiana State Prison for a term of not less than one nor more than ten years.

At the time the charge of armed robbery was filed a hearing was had to determine probable cause for the issuance of an arrest warrant. A capias was issued and the return showed the appellant was arrested on the same day. This was long before the filing of the charge of robbery.

The record discloses the following evidence in support of the jury verdict:

Mildred Schildmeier testified that she returned to her farm home at about 2:30 p.m. on November 29, 1969, to find three men holding her mother and a neighbor boy at gunpoint. One of the men whom the witnesses identified as the appellant told her not to make a "mis-move" or he would kill her. While the appellant held her at gunpoint one of the other holdup men requested that she open a safe in a bedroom. After she opened the safe the men took approximately $500.00 and various papers.

While on the witness stand Mrs. Schildmeier identified the appellant as one of the robbers. She also stated that she first identified the appellant from photographs which officers showed her during an interview immediately after the rob-

bery. She stated the next time she saw the appellant after the robbery was in court.

Randy Monday, the neighbor boy who was at the Schildmeier home during the robbery, testified that the appellant was one of the robbers.

Appellant first claims error in that there was no hearing to determine probable cause for the issuance of the capias on the charge of robbery. He does not allege how he was harmed by this omission. As appellee pointed out, the appellant was arrested pursuant to a capias issued after a hearing for probable cause on the charge of armed robbery. This was almost four months prior to the filing of the charge of robbery. It could hardly be argued that there was no probable cause for arrest for robbery as there was in fact a probable cause for an arrest on the charge of armed robbery. We hold that the first hearing on probable cause was sufficient to support the subsequent arrest on a lesser included charge.

We would further point out that appellant's contention also fails in this regard for the reason that jurisdiction over the person of a defendant is not terminated by an illegal arrest. *Dickens* v. *State* (1970), 254 Ind. 388, 260 N. E. 2d 578, 22 Ind. Dec. 164.

Appellant further contends that his prosecution on the charge of robbery without a probable cause hearing for the issuance of an arrest warrant on that charge violates *Kinnaird* v. *State* (1968), 251 Ind. 506, 242 N. E. 2d 500, 16 Ind. Dec. 250. In the *Kinnaird* case this court held that evidence obtained pursuant to an arrest made on a warrant issued without the showing of probable cause should be suppressed. In the case at bar there was no evidence seized at the time of arrest, thus the *Kinnaird* case would have no application even if there had been no probable cause hearing in this case.

Appellant next alleges error in that prior to the trial he moved for a separation of witnesses. It appears from the rec-

ord that the witness Schildmeier and the witness Monday ate lunch together prior to the testimony of Monday. Appellant claims that "it is inconceivable that his testimony to be given was not discussed over the lunch break." Appellant makes no affirmative allegation that there was such conversation between the witnesses. This court has held that where there is no affirmative evidence introduced that the witnesses had in fact discussed their testimony there is no reviewable question. *Callahan* v. *State* (1964), 246 Ind. 65, 201 N. E. 2d 338, 3 Ind. Dec. 761. This court has also held that the separation of witnesses is within the sound discretion of the trial court and if the order for separation is violated it is within the court's discretion to permit the witnesses to testify. *McCoy* v. *State* (1960), 241 Ind. 104, 170 N. E. 2d 43. In the case at bar the court made inquiry as to whether the witnesses discussed their testimony at lunch and found that they did not. We, therefore, hold the trial court did not abuse its discretion by permitting the witness Monday to testify.

Appellant next contends that it was improper for the police officers to show Mrs. Schildmeier photographs for the purpose of making identification. He claims this method of procedure violated the principle set forth in *United States* v. *Wade* (1967), 388 U. S. 218, 18 L. Ed. 2d 1149, 87 S. Ct. 1926. However, appellant does not point out any misconduct of the police officers or any improper suggestions on their part with regard to any photographs shown to Mrs. Schildmeier. This court has previously held that an appellant must state the manner in which he is prejudiced by an alleged error. See *Tapp* v. *State* (1966), 247 Ind. 252, 214 N. E. 2d 646, 7 Ind. Dec. 746. It is appellant's position that it is a violation of an accused's constitutional rights to take photographs to the victim of a robbery for identification. With this we do not agree. The Supreme Court of the United States, in upholding such a method of identification, stated in *Simmons* v.

*United States* (1968), 390 U. S. 377, 384, 19 L. Ed. 2d 1247, 88 S. Ct. 967:

"Despite the hazards of initial identification by photograph, this procedure has been used widely and effectively in criminal law enforcement, from the standpoint both of apprehending offenders and of sparing innocent suspects the ignominy of arrest by allowing eyewitnesses to exonerate them through scrutiny of photographs. The danger that use of the technique may result in convictions based on misidentification may be substantially lessened by a course of cross-examination at trial which exposes to the jury the method's potential for error. We are unwilling to prohibit its employment, either in the exercise of our supervisory power or, still less, as a matter of constitutional requirement. Instead, we hold that each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. This standard accords with our resolution of a similar issue in Stovall v. Denno, 388 U. S. 293, 301-302, 18 L. Ed. 2d 1199, 1206, 87 S. Ct. 1967, and with decisions of other courts on the question of identification by photograph."

We, therefore, hold there was no error demonstrated by the use of such method of identification.

Appellant next contends that the State having charged him with the crime of robbery by violence *and* putting in fear the State must prove both. The jury apparently agreed with appellant since they only found him guilty of the lesser included offense of theft. This point is therefore moot.

We find no error in this case. The trial court is, therefore, affirmed.

Arterburn, C. J., and DeBruler, Hunter and Prentice, JJ., concur.

NOTE.—Reported in 275 N. E. 2d 544.