Steven Michael WOOLSTON, Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 682S231.

Supreme Court of Indiana.

Sept. 19, 1983.

Rehearing Denied Nov. 29, 1983.

## 23. Criminal Law ⊕730(11, 14)

Jerry D. Stilwell, Princeton, for appellant.

Linley E. Pearson, Atty. Gen., Cynthia Sue Stanley, Deputy Atty. Gen., Indianapolis, for appellee.

HUNTER, Justice.

Defendant, Steven Michael Woolston, was convicted of attempted murder, Ind. Code § 35–42–1–1, § 35–41–5–1 (Burns 1979 Repl.) and received a twenty-year sentence. On appeal, he raises six issues which we have combined into the following four:

1. Whether the trial court erred in refusing to grant defendant's challenge for cause to a potential juror and in refusing to replace a juror;

2. Whether the trial court erred in refusing to give two of defendant's tendered instructions;

3. Whether the trial court erred in failing to grant defendant's motion to suppress;

4. Whether the trial court erred in refusing to grant a mistrial based on the prosecutor's closing argument.

A brief review of the facts most favorable to the state reveals that defendant broke into the home of his wife's parents in Haubstadt, Indiana, shot her, and then shot himself. At trial the victim testified that her husband had shot her. Defendant asserted the insanity defense and there was conflicting expert testimony regarding defendant's mental condition at the time of the shooting.

### I.

Defendant first argues that the trial court erred in denying defendant's challenge for cause concerning juror Glen Parker. During voir dire, defendant discovered that Parker's wife was an employee of the Indiana State Police and had typed some of the evidentiary documents for defendant's trial. Parker also casually knew three of the state's witnesses for defendant's trial. Defendant challenged Parker for cause, and the court denied the challenge after Parker indicated he thought he could be a fair and impartial juror. Defendant then used his last peremptory challenge to excuse Parker. He argues that by requiring him to use a peremptory challenge for Parker, the trial court denied him the right to select a proper jury.

The grant or denial of a challenge to a juror is within the discretion of the trial court, and this court will interfere only if the decision is illogical or arbitrary. *Morgan v. State,* (1981) Ind., 419 N.E.2d 964; *Holt v. State,* (1977) 266 Ind. 586, 365 N.E.2d 1209. One ground for a challenge for cause is that the juror is biased or prejudiced for or against defendant. Ind. Code § 35–1–30–4(11) (Burns 1979 Repl.).

We have previously determined that actual bias of a juror is not necessary. Rather, a juror's relationship with one of the parties may raise a presumption of implied bias. *Block v. State,* (1885) 100 Ind. 357. Thus, we have found grounds for cause when a juror's husband was to begin

working for the prosecutor after the trial on which the juror was sitting concluded. *Haak v. State,* (1981) Ind., 417 N.E.2d 321. In *Barnes v. State,* (1975) 263 Ind. 320, 330 N.E.2d 743, we remanded the cause for a hearing to determine whether a juror knew at voir dire or discovered anytime during the trial that his wife was a second cousin to a member of the prosecutor's staff. We said that if the answer was yes to either question then grounds for cause existed. *Id.* at 326, 330 N.E.2d at 747.

■ Although the juror in this case was not related to the prosecutor, he did have a close relationship with the State Police due to his wife's employment. He also was familiar with three of the officers who were to testify for the state and knew his wife had worked on some of the evidence in defendant's case. Based on this relationship, cause for challenge did exist and it was error for the trial court to deny the challenge.

■ Not every error requires a reversal, however. Reversible error occurs only when the error has prejudiced defendant. *Smith v. State,* (1982) Ind., 432 N.E.2d 1363; *Bates v. State,* (1971) 256 Ind. 490, 269 N.E.2d 749. Defendant has not shown how the error prejudiced him. Only one other juror was sworn after Parker. Defendant did not challenge that juror for cause and does not now argue that he would have used a peremptory challenge on the juror. Furthermore, a review of the voir dire reveals no attempt on defendant's part to discover any grounds for cause with respect to the last juror. Thus there was no reversible error.

Defendant also argues that the trial court erred in not replacing juror Donald Risley with the available alternate juror after Risley notified the court that he was familiar with Dr. Clare, a defense witness. Defendant had asserted the insanity defense and had called Dr. Clare as an expert witness. Immediately after Dr. Clare testified, Risley asked to speak to the court. Out of the presence of the other jurors, it was discovered that Dr. Clare had treated Risley's father and that Risley had little respect for the doctor. During questioning by both parties and the trial judge, Risley stated that his feelings toward Clare would not prejudice him toward the defendant. Risley also said he did not doubt the doctor's truthfulness, but did not respect his medical ability. He added that he would try to treat the evidence given by Dr. Clare the same as that given by anyone else. Defendant moved for Risley to be discharged and replaced with the alternate juror; the court denied the motion.

■ The decision whether to replace a juror with an alternate is within the discretion of the trial judge. It is for the trial judge to determine whether the juror is biased for or against defendant. *See Stevens v. State,* (1976) 265 Ind. 396, 354 N.E.2d 727. Only if defendant was placed in substantial peril will we find abuse of discretion. *Shepard v. State,* (1980) Ind., 404 N.E.2d 1. Here the trial court determined that, based on Risley's statements, the juror could be fair and impartial toward defendant. The record supports this conclusion and does not reveal defendant was in substantial peril due to Risley's prior acquaintance with Dr. Clare.

■ Furthermore, as the state points out, defendant could have discovered during voir dire that Risley knew Dr. Clare. This court has held that before a conviction will be reversed due to a juror's incompetency, defendant must show that he made an effort to discover the incompetency before the juror was sworn. *Henning v. State,* (1886) 106 Ind. 386, 6 N.E. 803; *Lockhart v. State,* (1884) 92 Ind. 452. Defendant failed to make any effort; therefore, the trial court did not abuse its discretion in refusing to replace Risley with the alternate juror. There was no reversible error.

II.

Defendant next alleges that the trial court erroneously refused to give two of defendant's tendered instructions. Defendant recognizes that refusal of a tendered instruction is error only if the instruction correctly states the law, the evidence sup-

ports the instruction, and the substance is not covered by other instructions. *Daniels v. State,* (1980) Ind., 408 N.E.2d 1244. He contends, however, that none of the instructions given adequately covered the substance of his tendered instructions. We find no merit in this argument.

Defendant's tendered instruction number two concerned the weight to be given expert witness testimony and attempted to define an expert witness. Although we have held that giving an instruction on expert testimony is not error, see *Hall v. State,* (1980) Ind., 405 N.E.2d 530, 535, it is not necessarily error to refuse to give the instruction. Furthermore, defendant's instruction told the jury that although expert opinions are not binding, they are to be used to aid the jury's deliberation. This statement is misleading because the jury may disregard an expert's opinion entirely. *Id.* Also, the trial judge's preliminary instruction number eight, advising the jury on how to weigh the testimony of *all* witnesses, adequately covered the substance of defendant's instruction.

Defendant also argues that because there was conflicting evidence on defendant's state of mind at the time of the incident, the jury should have been instructed on how to reconcile two conflicting theories. The substance of defendant's instruction was to describe reasonable doubt to the jury. The trial court had done this in preliminary instruction number seven. Moreover, the conflicting evidence in this case was that of the differing opinions of the expert witnesses concerning defendant's sanity. As we previously discussed, the trial court had instructed the jury how to weigh the testimony of witnesses. Instructions are to be considered in reference to one another and as a whole. *McMillian v. State,* (1983) Ind., 450 N.E.2d 996; *Porter v. State,* (1979) 271 Ind. 180, 391 N.E.2d 801. When the preliminary instructions are read as a whole, they adequately covered the substance of defendant's instruction on conflicting theories. Therefore, it was not error to refuse the instruction.

III.

Defendant argues next that it was error to admit testimony from Officers John Neidig and Michael Sibbitt regarding statements made by defendant at the hospital because the state failed to prove beyond a reasonable doubt that defendant knowingly and voluntarily waived his rights. Defendant also argues that he was prejudiced by the admission of the statements because they tended to show that he was rational shortly after the incident, which rebutted defendant's insanity defense.

Once the defendant has raised the issue of whether a confession was voluntary, the state has the burden of proving it was voluntary beyond a reasonable doubt. *Chandler v. State,* (1981) Ind., 419 N.E.2d 142; *Grey v. State,* (1980) Ind., 404 N.E.2d 1348; *Magley v. State,* (1975) 263 Ind. 618; 335 N.E.2d 811. The question is for the trial court to resolve, and on review, we will not reweigh the evidence or judge the credibility of the witnesses. The trial court's ruling will not be disturbed if it is supported by substantial evidence of probative value. *Chandler,* 419 N.E.2d at 147; *Fleener v. State,* (1980) Ind., 412 N.E.2d 778.

In the present case, the trial court held two hearings outside the presence of the jury. The first hearing was to determine if defendant's statements to Officer Neidig were knowingly and voluntarily made, thus waiving his *Miranda* rights. Officer Neidig testified that he visited defendant in the emergency room. After Neidig had introduced himself, defendant stated, "I shot my wife." Neidig then questioned defendant, who responded. Defendant was slipping in and out of consciousness during this time. When defendant had regained consciousness, Neidig read defendant his *Miranda* rights and asked him if he understood them. Defendant indicated that he did. Officer Sibbitt entered the room at that time and took a statement from defendant. The trial court admitted into evidence defendant's statement that he had shot his wife but ruled that all of defendant's responses to

Neidig's questions before defendant was read his rights were inadmissible.

It is well settled that *Miranda* rights must only be read prior to custodial interrogation. The requirement does not apply to volunteered statements. *Smith v. State,* (1981) Ind., 419 N.E.2d 743; *Hatcher v. State,* (1980) Ind., 410 N.E.2d 1187. Defendant's first statement to Neidig was voluntary and not a product of a custodial interrogation; therefore, it was not error to admit it. The trial court also was correct in ruling defendant's responses to Neidig's questions inadmissible because Neidig testified he had not read defendant his *Miranda* rights prior to questioning him.

However, Neidig also testified that once defendant regained consciousness and remained conscious, he read defendant his rights and asked if he understood them. Defendant indicated that he did. During the second hearing, Officer Sibbitt testified that he walked in the room as Neidig was asking defendant if he understood his rights and heard defendant answer yes. Sibbitt then took a statement from defendant. Although both officers testified that defendant was probably in pain, they both testified that he indicated he understood his rights, and that he was conscious and coherent throughout the interrogation. There is sufficient evidence that defendant's statement was knowingly and voluntarily made and was not coerced or induced by any promises. It was not error to admit the statement given to Officer Sibbitt.

## IV.

Defendant's last argument is that the trial court should have granted a mistrial because of prosecutorial misconduct. During closing argument, the prosecutor told the jury that defendant had not called Dr. Hurst, a psychologist, to testify because the doctor probably would have testified that defendant was sane. Defendant objected and the trial court instructed the jury to disregard the remark. Defendant then moved for a mistrial which the trial court denied. Later the prosecutor commented on the condition of the victim, who was confined to a wheelchair as a result of the shooting. At defendant's request, the trial judge gave an admonishment to the jury but denied defendant's request for a mistrial. Defendant contends that the prosecutor's comments, when combined, were too prejudicial to be cured by admonishments to the jury and that defendant was placed in grave peril.

In *Maldonado v. State,* (1976) 265 Ind. 492, 355 N.E.2d 843, we set out the procedure for determining whether prosecutorial misconduct occurred and if so, whether a reversal is warranted. First we must determine if the prosecutor engaged in misconduct. If we find misconduct, we then determine whether defendant was placed in grave peril. To determine whether grave peril existed, we look to the probable persuasive effect of the misconduct on the jury's decision. *Id.* at 498–99, 355 N.E.2d at 848. Defendant is correct that commenting on what a witness would say when the witness has not testified, is inappropriate. Also, the prosecutor should not have commented on the victim's condition since it might invoke sympathy for the victim and consequently, prejudice defendant. Therefore, the trial court correctly sustained defendant's objections and admonished the jury.

We cannot say, however, that the prosecutor's statements required a mistrial. The grant or denial of a mistrial is within the trial court's discretion, and will be reviewed only for abuse of that discretion. *Morgan v. State,* (1981) Ind., 419 N.E.2d 964; *Marsh v. State,* (1979) 271 Ind. 454, 393 N.E.2d 757. A review of the record does not support a finding that the prosecutor's remarks placed defendant in grave peril; thus, the trial court did not exceed its discretion. *Marsh,* 271 Ind. at 457, 393 N.E.2d at 760.

The prosecutor's first objectionable statement stemmed from defendant's cross-examination of the state's expert witness, Dr. Woods. The defendant had questioned Dr. Woods about Dr. Hurst's medical opinion. Consequently, on re-direct, the state elicited

a response from Dr. Woods that Dr. Hurst believed defendant was sane. Although the prosecutor's comment about Dr. Hurst was inappropriate, defendant has not shown how it prejudiced him because the jury had already heard Dr. Woods' testimony. Similarly, the victim was in a wheelchair when she testified before the jury. The jury was aware of the victim's physical condition prior to the prosecutor's remark. Based on the entire record, it cannot be said that the prosecutor's comments, even when considered together, had such a persuasive effect on the jury's decision that they placed defendant in grave peril. Furthermore, the trial court admonished the jury to disregard both of the statements. On appeal, there is a presumption that the jury obeyed the trial court's instruction. *LaBine v. State,* (1983) Ind., 447 N.E.2d 592, 595; *Webster v. State,* (1980) Ind., 413 N.E.2d 898. There were no grounds for a mistrial.

For all of the foregoing reasons, there was no reversible error, and the judgment of the trial court should be affirmed.

Judgment affirmed.

GIVAN, C.J., and PRENTICE and PIVARNIK, JJ., concur.

DeBRULER, J., concurs in result with opinion.

DeBRULER, Justice, concurring in result.

At the time appellant was informed of his *Miranda* rights, he was lying in a hospital emergency room, suffering greatly from a bullet wound to the chest, and had just been drifting in and out of consciousness. According to the officers, he remained conscious and coherent after acknowledging that he understood his rights and answered questions. I find this evidence insufficient to warrant the conclusion beyond a reasonable doubt that appellant knew and appreciated his right to remain silent and to have counsel present, and knowingly chose to forego those rights. I find further however that under the circumstances of this case the error in admitting the statements and the officer's testimony regarding them was harmless beyond a reasonable doubt.

It is appellant's argument that the benefit to the State's case, and the harm to his case, produced by the introduction of his statements, did not flow from the incriminating substance of them, but from the inference which they would support that he was behaving rationally and had recall shortly after the attack. As posed, this conceived inference would tend to support the State's rebuttal of the insanity defense. That this inference was even made by the jury and that it had measurable impact on the decision to reject the insanity defense is speculative and remote. I would therefore conclude that any constitutional error in the admission of the statements was harmless beyond a reasonable doubt. Since we deal here with the use of statements challenged on *Miranda* grounds, *Mincey v. Alabama,* (1978) 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290, does not bar this constitutional harmless error conclusion.