MAURICE L. BARNES *v.* STATE OF INDIANA.

[No. 573S99. Filed July 10, 1975.]

A. *Martin Katz,* of Gary, for appellant.

*Theodore L. Sendak,* Attorney General, *J. Roland Duvall,* Deputy Attorney General, for appellee.

ARTERBURN, J.—Defendant was tried and convicted by a jury of the crime of First Degree Murder. Since the victim was a police officer acting in the line of duty and known to be such by the Defendant, Defendant, pursuant to the statute, was sentenced to "life imprisonment without possibility of parole." Ind. Code § 35-21-4-3, Burns § 10-1005b (1974 Supp.). Defendant appeals.

Defendant raises four (4) issues. On one of these issues we find it necessary to remand this case to the trial court for an evidentiary hearing. However, we will at this time consider the other three issues raised by Appellant since there is a possibility that the remand will not result in a new trial.

Defendant's first allegation of error is that the evidence was insufficient. The evidence must be considered from that viewpoint most favorable to the State. *Blackburn* v. *State*, (1973) 260 Ind. 5, 291 N.E.2d 686, and cases cited therein. That evidence is that Defendant, an inmate at the Indiana State Prison, escaped from the prison after stealing guns and a car from a prison guard's residence located on the grounds of the prison. As Defendant was driving this car down a local road, he passed a Highland Police Department squad car driven by Officer Sheppard, who was in full uniform, and containing two other Highland police officers who were in civilian clothes. Defendant was speeding. Officer Sheppard, apparently unaware that the driver of the speeding car was an escapee, activated the siren and red light of the squad car. After a short chase, Defendant pulled over and stopped. Officer Sheppard got out of the squad car. As he was putting on his hat, the Defendant emerged from the car he had been driving and began to shoot at Officer Sheppard while advancing toward the squad car. Officer Sheppard grabbed for his gun, turned, retreated and fell at the back of the squad car. After Officer Sheppard had fallen, defendant shot at him once more. Officer Sheppard was dead on arrival at St. Margaret's Hospital.

The thrust of Defendant's sufficiency argument is that the essential first degree murder elements of premeditation and malice were not proved. However, it is well-settled that these elements may be inferred. Malice may be inferred from the use of a deadly weapon. *Aubrey* v. *State*, (1974) 261 Ind. 531, 307 N.E.2d 67; *Brattain* v. *State*, (1945) 223 Ind. 489, 61 N.E.2d 462; *Landreth* v. *State*, (1930) 201 Ind. 691, 171 N.E. 192. And, premeditation, which may be inferred from all the circumstances surrounding the killing, may occur but an instant before the act. *Brewer* v. *State*, (1969) 253 Ind. 154, 252 N.E.2d 429; *Farley* v. *State*, (1962) 243 Ind. 445, 185 N.E.2d 414; *May* v. *State*, (1953) 232 Ind. 523, 112 N.E.2d 439.

Defendant also suggests that due to the quantity of pills and liquor which he had ingested prior to the shooting he was incapable of forming the requisite intent for first degree murder. This question, like the other elements of first degree murder, was also for the jury. *Stout* v. *State,* (1974) 262 Ind. 538, 319 N.E.2d 123; *Davis* v. *State,* (1968) 249 Ind. 373, 232 N.E.2d 867; *Cotton* v. *State,* (1965) 247 Ind. 56, 211 N.E.2d 158. The jury heard testimony describing Defendant's behavior in the hours after the shooting and during the earlier escape incident. The jury heard testimony concerning the probable effect of the amount and kind of pills and liquor Defendant claimed to have taken. From all this evidence the jury concluded that Defendant did possess the requisite capacity to form the intention to kill. The jury is the sole judge of the weight and credibility of witnesses. Since there was probative evidence to support the decision of the jury, we must affirm that decision. *Blackburn, supra.*

Defendant's second claim of reversible error is that he was prejudiced when the trial court permitted to be introduced into evidence the video-tape of a confession wherein Defendant had referred to past crimes which he had committed and for which he had been convicted. The general rule is that in a prosecution for a particular crime evidence of other crimes committed by the defendant independently of the offense for which he is on trial is irrelevant and therefore inadmissible. *Burns* v. *State,* (1970) 255 Ind. 1, 260 N.E.2d 559; *Roddy* v. *State,* (1970) 254 Ind. 50, 257 N.E.2d 816; *Raines* v. *State,* (1968) 251 Ind. 248, 240 N.E.2d 819. However, there are numerous exceptions to this general rule. One of these well-established exceptions is that if insanity is an issue in a criminal cause, evidence of relevant acts and conduct during the life of the defendant are admissible for the purpose of determining defendant's sanity. *Fulmer* v. *State,* (1967) 249 Ind. 261, 230 N.E.2d 307; *Kiefer* v. *State,* (1960) 241 Ind. 176, 169 N.E.2d 723; *Baker* v. *State,* (1921)

190 Ind. 385, 129 N.E. 468. Defendant filed a written plea of insanity. The question, then, became whether or not the evidence in controversy was relevant to the issue of Defendant's sanity. A trial judge has wide latitude in ruling on the relevancy of evidence. *United States* v. *Gibson*, (1967) 385 F. 2d 341. Defendant's video-taped statement was a long, idiomatic and idiosyncratic narrative description of and explanation for the escape which led to the shooting of the officer. Defendant, a prison trustee, had considerable freedom and responsibility; he stated that he escaped in order to kill his wife who had been unfaithful to him and who was planning to divorce him. The past crimes which he described were rapes. We think these incidents, as narrated and explained by Defendant himself, were relevant to the issue of sanity in that the narration gave the jury insight into Defendant's relationships with women; the pattern of relationships in an individual's life is relevant to the judgment of whether or not that individual is legally sane.

Defendant's next contention is that the statute under which he was sentenced deprived him of the equal protection of the law. Defendant's claim is that Ind. Code § 35-21-4-3, *supra*, violates the Equal Protection clause of the Fourteenth Amendment to the United States Constitution. The statute provides that "whoever shall kill a peace or police officer knowing him to be such an officer while such officer is performing his official duties shall upon conviction of murder in the first degree be sentenced to death or life imprisonment without parole." An equal protection claim which, as here, does not involve a "suspect classification" is a claim that the statute in question discriminates without a rational basis against one of the classifications established by the statute. *U.S. Dept. of Agriculture* v. *Moreno*, (1973) 413 U.S. 528, 93 S.Ct. 2821, 37 L. Ed. 2d 782; *Forks* v. *City of Warsaw*, (1971) 257 Ind. 237, 273 N.E.2d 856; *Burnett* v. *Camden*, (1970) 253 Ind. 354, 254 N.E.2d 199. In this instance the murderers of police officers are treated more severely than

the murderers of non-police officers by being denied the possibility of parole. Certainly there are rational policies behind such a discrimination. It is rational to believe that police officers, who are in more danger of being murdered than non-police officers, should have the benefit of whatever deterrent effect a more severe penalty may provide. It is rational to provide police officers with the knowledge that those convicted of murdering police officers will forever be isolated from that civilization which the police help us to maintain.

Defendant's final contention is that he was prejudiced by the inaccurate voir dire answers of a juror. The facts are that on voir dire a juror was asked if he "had any friends or relatives on the prosecutor's staff?" The juror answered, "No." It seems that in fact this juror was married to a second cousin of a member of the prosecutor's staff who was involved to a slight degree in the trial of this cause.

Ind. Code § 35-1-30-4, Burns § 9-1504 (1956 Repl.) provides that: "the following shall be good causes for challenge to any person called as a juror in any criminal trial:

\* \* \*

"Eleventh. That he is biased or prejudiced for or against the defendant.

\* \* \*

Fourteenth. That he has a personal interest in the result of the trial."

In response to the Motion to Correct Errors the State submitted affidavits which indicated that its representative was not aware at the time of trial of the relationship. It appears that the family of the juror's wife was quite large and the relationships among distant relatives tenuous. The prosecutor's representative stated he had not seen or heard from his second cousin in eleven years.

Nevertheless, the possibility of bias existed. If the juror lied, his misconduct was ground for a new trial. Ind. Code § 35-1-42-3, Burns § 9-1903 (1956 Repl.). If the answer was inaccurate, it prevented the defendant from investigating

a possible source of future bias in favor of the prosecution. Even though the juror may not have been aware at the time of the voir dire question of his relationship, if at any time prior to the verdict he discovered such a fact; the possibility of bias existed. In such a situation the defendant would need to have the opportunity to probe the juror and, if he chose, to challenge for cause. Of course, if throughout the trial the juror never knew of the relationship there would be no error since the relationship could not have influenced his decision.

Therefore, we must remand this case to the trial court for an evidentiary hearing for a determination of the following questions:

(1) During voir dire was the juror aware of his relationship to the member of the prosecutor's staff?

(2) At any time prior to the verdict, did the juror become aware of his relationship to the member of the prosecutor's staff?

If either of these questions are found to require an affirmative answer, grounds for challenge for cause will have been shown to have existed, and a new trial must be ordered. However, the trial court should also determine whether or not at any time prior to the verdict the defendant or his attorney knew of the relationship. If so, then the challenge for cause would be waived if the defendant did not promptly inform the court and challenge the juror. *Nix* v. *State,* (1960) 240 Ind. 392, 166 N.E.2d 326; *Maddox* v. *State,* (1952) 230 Ind. 92, 102 N.E.2d 225.

This case is remanded to the trial court for an evidentiary hearing pursuant to the directions listed herein, and if no new trial is granted pursuant to this mandate, the judgment is affirmed.

All Justices concur.

NOTE.—Reported at 330 N.E.2d 743.